both sides and Miss Jolse We see that you've been r an admirable job on behal We thank you for your ser numbers 13 52 05 13 52 06 America versus Kim and oth to exceed 30 minutes to b 30 minutes for the plaint Goodwin for the appellant the court. Your honors, M going to argue for 13 min out of the court. Then Mr argue on behalf of his cl two issues which I think the defendants. So you're his time. Is that what yo use a total of 18 and he' He's just going to addres court, I believe. All rig she's representative of t here. These these appellan national women who were c to commit murder marriage lasted over 10 years. Um, at the time she married h 2002. She was 22 years ol earlier. In fact, the sam child was born. Um she me him. She didn't speak any any Khmer, which she spok to communicate. The marria was arranged by an individ is consistent with with a and appellants here. The by a coordinator, one of coordinators that the gov were in this grand conspi was married, the american marriage got paid. And af American citizen went bac and lived there. Years la received paperwork for to States on a spousal visa an American or to a membe sounds like a sham marria government's argument. It american concept of a mar sham. Uh and then argued the significance of the c I think that's the cleare your honors requiring rev Well, I mean, and I under that expert to testify ab practice of arranged marri that? Yes, absolutely. No Well, the proposed expert who worked for the U. N. in societal customs and n that a lot of marriages w but rather provide some h perspective on marriages a lot of marriages are ar uh some of the government point at trial to us on c you got that point in in a very limited extent thr uncredible and untrustwor of what the government sa of this evidence and it's The evidence came in thro who was the star witness and he was one of these a and Mr Niev was an admitte that's what I'm doing. He court in his plea agreeme that that's what he was d figure for the jury. Uh, was not credible. He frank all over the place. That' start out. Absolutely. Bu on the very surface of wh been able to testify to i it was so prejudicial to witness. Well, I guess it seem to follow to me the because I mean, sure, per mean that that doesn't in to the United States. I m not part of their cultura he would testify about. A was no evidence at trial witnesses that these, at I believe all the Cambodi were informed that it was participants said we knew we got paid. They told us so for this arranged marri you, I mean, you would th arranged marriage. Is tha guy is coming over on a p and he's got a girlfriend I'm paying somebody, you for this. I mean, doesn't us outside of the cultura marriages? Actually, it d would have testified that in Cambodia met their spo fact for an American. Let expert would have said ha to testify? There was a r a notice of his, I think of the expert's opinion t and the basis for his opi some of the information f you'd like. Uh, and then to exclude him pretrial. testified at trial. We do know what his testimony w It was, it was alleged in expert, your honor. He wo as to, to the, to the 43% arranged in Cambodia. Tha that. But you know, norma have something to do with marriages of their Childr what, what in the world w gotten out of this if it to come to the United Sta didn't live in a marital doesn't look like an arra the, in the traditional s of facts that didn't come court, but that Dr Huberl to would be one that it's marriage in Cambodia as b proposition where one spo up. Uh, and, and that the and missing did not pay f no evidence that she paye here in the United States but the, that there's a b perspective to this and t to marry up. And certainl a very successful marrying in the United States. She getting a spouse in the U a job where she had to wo he was, so he would have to that perspective and h throughout Cambodia. He w to testify that it's extr a third party to be hired the marriage. He would ha at all unusual to have so paid to find me a spouse. able to, to testify that spouses to live apart afte one has to go seek work. country. So it's very com say there's a really good States and immediately go would be apart for some e Again, concepts that are United States to our jury been particularly crucial hear from an intelligent, witness who would have be client married Mr Hibberd he testified that your cl at the wedding. Well, he say something along those pretty shaky. He said tha there and it was a family affectionate. I believe u was there and they were l cross. He said he didn't or not. There was someone were close, which I think Her family was there. Her there, if she it's all th ceremony that's consisten If there, if in her mind, get her religion involved family? Because she's bein believe she's getting thi United States and be able eventually. Isn't that mo belief that she's going t States and escape the con of of Cambodia. I mean, i that's an uh that's a mor on her part. There's no d that that's part of the r up. Uh and that's one of doing that would be the o if that's the case, she w for years. So there's not party for her. It's a it' for her. It's just the sa arranged, paid with someo and all those things as h her friends all went thro of marriage. But they but in the United States, did not her mother, but but o her community did. It was and go to the United Stat that was certainly okay. issue that I think is par a reversal here is that t to prove a single conspir individuals, Mr Ang and t before the court. Um we'r consumer at the end and t in the evidence in the li to the government and and these marriages were some they were individual uh c the Cambodian woman, the, the coordinator of the, t They did not join any gre evidence that they joined that lasted some 10 years was married in 2000 and 2 weren't any of these peop of them eight years later was no there was no overa There's no requirement th conspiracy have to have t of knowledge or have to e at the same time if it co of time for that to be a Isn't that true? Absolut that's what the court add and really originally in Supreme Court and says th one of these, these are a there still has to be a c the defendants join in, o conduct or committing the times with the same with, but rather a common goal into and then also some i between the parties. Ther different marriages didn' have a common goal other the same crime essentiall entering into these marri United States. But there that connected one to the government even alleges g into a marriage that would to the United States. Is' I don't believe that's th Swofford requires in Swoff is in Swofford. It was a, a garden shop and he sold different defendants. I k of time. And so you can s more in your, in your rebu you. All right. And are w your co council at this p All right. Sure. My name I represent. So what I'd impress the court on is s was markedly different, m other three appellants he some of the same issues r and other issues that I'v purpose of this presentat court to focus on what I important part of my clie makes her deserving of a is that the government ne And when I say never prov one smidgen of evidence t miss second day. So was a in a conspiracy to commit she got married and the i the law state that the go that she entered into the entered into the marriage so for the purpose that t that's the key word was e purpose of evading the im that the fact that the go that she was aware of the in it is fatal to their c into an exacerbates proble is the government's misco statement in its closing they manufactured or made to establish the existenc and the knowledge element ceremony prior to the mar that and convince the juri in fact aware of the frog marriage when she wasn't. met or married Mr McAllist Yes sir. Didn't he testify came to his apartment and two days before the marri this is no, that's that's Okay. Explain what the re recognized in its closing little different. It's ac different. Mr McAllister, Cambodia with his father, because I'd ask the court in the light of Miss so's it is a subjective test. that the court or the jur determining whether, wheth the conspiracy fraud, you commit a conspiracy. So s showed up at the airport Seconde was there with he father, with other relati with an interpreter. So s be armed and ready to esta pursuant to her culture a someone that she could ma was interested in putting together. And the defense we didn't put on any evid that I'm presenting here the government's presenta it came primarily from Mr And he testified that he They spent virtually every first trip. They went to Chinookville, which is th hometown, which is phenom on the beach, dine to fin tourist attractions, um, and then ultimately had t And after that, Mr McAllis and he made plans to obta his future bride to the U that period, which was ov regular contact with Seco postcards, love letters a as I said early, if you l so perspective, she thoug deal. And this is very di that the government introd the other three defendants uh, the sham was, was rec start. There wasn't the g Never ask. And Mr McAllis any proof or any evidence he told, so couldn't they this for the money or tha of living with you or tha abandon you as soon as yo And to the contrary, what he enjoyed her and he got from the government's pers that was a problem. Okay. case based on the discover pre trial and discovery i that he never told Miss S their time in Cambodia, t In fact, the proof that I he told Miss so about his second visit when she was the United States that by the engagement period, I my brother's girlfriend, she's living with me and So she's on the plane expe next day and gets hit with a zinger on her way to th recognized that. So they the courtroom and I hear which is the U. S. Attorne and you'll hear proof tha Mr McAllister told, so co girlfriend that woke me u that also in the area bec error because it curved m presentation had to be, h because I did not, I tone I couldn't make my attack case consistent with what honors. And then excuse m I wanted, I wanted, I wan with the jury on that Mr to be a witness that's go to the defense because he that he played the role o for my client that he nev this was fraudulent. I he opening said, oh, they've going to, he's going to s with what he's told the, his marriage interview an in my investigation. So I for it. Well, I was ready came. But then when I cro I had to rip out some of because I certainly didn' most elementary mistake t which is do more damage o I didn't want to open the want to ask him, isn't it didn't tell her because t go down, down that road. issue, even though the go an issue in opening. But was done in this case was made the motion for direc judge McKinley. And I bas closing argument to the c was standing there and I that my clients entitled because the government fa my client was aware of or part of a conspiracy befo on U. S. Soil second day And at that point, the ju closing argument, but it' Your motions denied, make to the jury, which I did. first closing and that we not object. It was a clean blows. I made my closing in much greater detail th today. Then the air occur a question. At what point client, would your client the, the, the agreement, understanding of a sham m she's in Cambodia and, yo an engagement visa or is she says I do? I think it any time the statute says of marriage fraud for imm is was entered into when into, did she do so for t the, so it has to be befo before. I kind of underst getting there. I apprecia I mean, that does make it it? Because she does find under your, you know, you she gets married, right? know, sometimes we're all lawyerly and inspecting t on checking and being box from a relationship stand want, don't we want to be want to believe that ther believe there is no other my wife tells me that and it. I want to believe my to marry me even though I I want to believe it even So, and it's, I think it' for the quarter. Anybody test on this. So consider she's in another country that what the jury had to did it, right? They did i with the benefit of a low is particularly egregious is the fact that this was I, I really sat, sat quie trial because the governm focused on my case at the time. We have three, we h So I sat there as they wen I was amazed at the job t was, I was amazed. It was I learned a lot. I mean t of the proof was great. B realize it was a slow dea putting, putting across t the cloaked in the author attorney, they're building with the jury. So in the attorney says to the, say in the rebuttal that we h slight maybe paraphrase a that she knew of the girl zero. They had nothing ex I think you're getting. W just want to make sure I conceding they had evidenc shortly before the marria plane, right? Right. I am the proof. I can't get ar the proof. She did know t was the slow blow that you that you didn't know they were. You didn't. Well, t jury, the jury here is al the about the three other were the proof of the fra of the marriage were real far as you know, the, th being out there and all t president in this case. B to move. So Sukuntha's ca the damaging evidence of had to create evidence th that was where the prosec statement before Mr McAlis Sukuntha. So before he be told her about his America said, that's what he said became engaged. But you s object to that, correct? I'm not, I couldn't objec that I couldn't. I think t the prosecution takes a s I should object. I couldn' but you said that they we that that this only happe on the plane to the Unite you couldn't object. You have gone up to the bench I didn't because I thought government was going to p would get on the stand an to the immigration officia to try to protect the mar the truth. And she knew t from the start. I expecte to improve their case. I had a basis to object. Ea was told on the plane, as out a couple of days befo about this. And now you j government said, that's a she took? I mean, what's proof is, the proof is sh plane. The government arg she was told before the e never any proof and the g never proved that. That w misstatement of the law a I'm sorry, please. Okay, opening and I'm sure the opening statement is not the government made that you say was not true in o told the jury opening stat Why isn't that harmless? Yeah, I think I think I w to that position if it we up on the rebuttal closin attorney says you've hear that she knew about McAlis knew it was a sham and th not the fact. So they, th it doesn't become an isola on opening becomes this r happened in opening was n any of the proof. And the after I've sat down and h of the jury, they finish all sorts of evidence whe none. You couldn't object there and the opinion or opinion was so egregious trial judge said, said, I and he's judge McKinney s you're going to say when this was, I think it's pl was so obvious that my on window of acquittal that to prove that she didn't marriage until until the say she didn't know that regarding the legitimacy she met actually met McAli that the government had h and argue evidence that w case. All right. Thank yo here from the States. May My name is Daniel Kennec the United States via the Kentucky in Louisville. U address Council Olash's c comments that were made b an opening statement as w He's correct in terms of the evidence would show t was aware of before she g James McAllister had a gi We do can see that that's whatever happened during was not asked of Christof and it's not in the record to show that. However, um Olash calls it a low blow to say that it's flagrant it's flagrant under the l agree that it's improper, but it's not flagrant. An It was said twice within meaning that when the pro through the evidence that he said that she knew abo there's about five other evidence and then he came it again and moved on to fraudulent marriage that the two times that it was entire trial. So are you? that it was that that rep made an opening and then No, what I'm saying is th statement, um, the, uh, w James McAllister or Sukru that, um, that her future from back home. We didn't trial. It was set an open But what I'm saying is th blow that rises to the le should be reversed. And I it repeated again in the was repeated in the closi and it's in the briefs th so knew about Christopher  it was before the engagem have something to the rec I would stand by that. B was not something under t expansive or something th case on. That wasn't the I mean, just to stay on t if the prosecutor said in knew before the engagemen wrong, right? It is sure. only was there no evidenc and and so the jury hears Ola says really undermines case. And then they hear and closing that, you kno evidence that she knew th I mean, at least the jur connect the dots, wouldn' it's essentially a repeti they said before she knew You know, as Mr Olash sai took place over a long pe on a Tuesday. Well, long started on a Tuesday. We Wednesday. And so in term isolated time that it was believe that the jury wou it. Frankly, I think they in all the actual substan was shown regarding the i be drawn. That's a country knew it was a fraudulent foremost, the fact that h who orchestrated it. Cong play into an arranged mar they were able to argue t and the government was, t arranged marriages, um, i arranged marriages. And s And those were the argume were made. So as we look we look at the evidence t involvement was to say th is simply counter to the at trial. Okay. But since again, who arranged the u doesn't that play into so issues as judge catholic that argue for inclusion the expert testimony to s issues regarding arranged If the problem is, is wit to the cultural issues. U weren't the elements that for. And so as a result of and Judge McKinley got it relevant. Um, in terms of someone would get married because essentially what, explain why they would ge fraudulent purposes. But whether or not they appre fraudulent. That's where bearing is, isn't it? No, what, in terms of the cul terms of sharing, but it I mean, the question is t this fraudulent marriage entered into a marriage f a provision of the immigr what we had to prove. And prove overwhelmingly evid And so the cultural dynam not be able to opine. Hu to abide. And that's what to do. Hugh line would no Oh, and by the way, it's that arrange marriages. for avoiding immigration there. That's what they w back door. And the court it's not relevant. How wo in terms of asking Sakuti marriage? I mean, it simp relevant as it relates to believe so. You know, but argues is that this goes to the, the knowing elem whether or not the, uh, t some of the others, um, y intent, what their knowled was. And, and the, and th as I understand it, would information, this educatio the jury could evaluate t statements in the context I guess, educational over I could you and forgive m a couple of things. I'm g my first, the first one w Um, 704 absolutely preclu would not be able to say did this, uh, knowing tha marriage. So, so, and, a The second part, and I th it. Okay. But I, but I wa because no, I don't, I di to say that they would as on this ultra, this ultima give them background on t in which the jurors would that information to, I gu use all of the information in understanding, uh, thi would probably bear on, I they were going to do. Th So, well, I don't, I mean testimony, I think one of should look at is the, is in that case, there was a threatening a congressman hat off, had blood on it. Virginia Tech shootings a says, oh, wait a minute, that because that was, th They weren't actually thr in that case, actually au there's an expert witness that in his culture, those or could be considered in and let him withdraw it. because the substance of issue in terms of were th they not threats in terms Our case, um, with all du of, you know, it's a poor like to go to America and of it. Um, arranged marri there. That still doesn't do with whether or not sh for legitimate purposes. it's an arranged marriage to that. And in through t who was the United States uh, inspector, uh, throug Neve. Um, all those indiv those things in bits and marriages in the culture. who has been called a rep believe that's entirely a in terms of what he said trying to help people and to come to the United Sta about the culture and bit that's relevant, why isn' uh, two other things. Whi I guess important if the that their expert can, ca on culture because clearl a jury of, I guess people who had an appreciation o wasn't that important? No to ask that. I couldn't t I couldn't tell you what an assumption because we also from the, we don't k me on. Actually, that's p too. And that's probably because in Lee and you lo of all the experts, the e to interview the person, and go through and submit my opinions are going to of that here. And so fran be a crapshoot. If you've up on the stand and start hip in terms of what he t what the opinion was. Tha we're most concerned abou going to say? Well, that' And so in this case, uh, There was, there's none o relate, you know, I mean, be talking, given a histor Well, so what, what does Sakuti? So who he hasn't How do we know that how l We don't know any of that So, so in terms of the, u on that, it was not an ab your honor. Um, what's yo knowledge before the marr was doing this for sham p immigration laws before t the marriage took place. year waiting period. Uh, that time, about a year a denied her visa to come o James McAllister gets on there and convinces the a there to stamp it approve back on january 30th and february 1st, they get ma of that, when they arrived and they came to the apar Keisha Wiley and their so Sakuti. So met them and e son. And, and there was t James McAllister that his very happy about that. An Sakuti. So knew she didn' with Khabchiyev, who's th went to Lexington. I was the marriage and you're t subsequent to the marriag the marriage. That's two And that's exactly where Additionally, in terms of were written, they were a from Christopher James Mc uncle Kong Thai to write. those were from Lexington from Louisville and they this was to maintain the that there's a relationsh one of the reasons why he because they didn't belie of it. And so that those is one of them. The other James McAllister went ove in separate rooms when th it was understood that th live with each other. The was no Sakuti. So saying McAllister, I were, why y here? She knew. And that' Khabchiyev came, picked h Lexington. She was workin later they get married. A the marriage, because you in terms of the objective was not just to get marria vehicle, the fraudulent m lawful permanent residence so important. I think peop that the conspiracy didn't The conspiracy stopped af lawful permanent residence about a year later, the m the traditional marriage we see on television and really happened. Um, and you agree with Mr Olash t for this crime as charged time when she needs to ha intent is before the marri said, spot on before I do that she knew that this w marriage. And we believe of the phony documents, t when she came over and be do when she meets the gir and two days later before that's sufficient to show was involved in this frau the remainder of my time single conspiracy versus Um, as the court knows, a the facts in this case, I sheer torture to read um, but, but they're all impo they're important is beca your run of the mill cons two or three people. This conspiracy. It was a sing five key leaders and organ the hub in this case. And the transactions, I've hea to drug cases. Well, it j know, um, you know, the d  there was a variance there Our case is completely di in the sense that there w Not only that each individ to the United States and to get married and attain But there was also the la keep the conspiracy going bring families and friend to the United States. We chin, who's one of the le when he came by means of in 1999, uh, Boutia need w actually found his phony to go over there and marr the behest of Michael Chin Chia $20,000. And when Mi the United States later b about four years later, h same thing with Sona and defendant in this case. A participated in orchestr fraud there. So, and one that was asked of, of, of was, you know, in terms o when they came here, you be the person who would h no, they had family and f it was understood that th just going to be left out had already planned that be to go. And with, with Peck out in both of those up here in here, excuse m and Winchester at 204 Woo at the same address. And along with pick D. Lee, w unindicted co conspirator the remainder of the fee individuals to need. And little facts are so impor the framework of how this evidentiary item that's i is that these weren't just were in Swafford. Someone and buy some iodine and I a lot of methamphetamine. take a minute to these, t that, hey, we're in it to going from, you know, in limb's case, that's a fou time. Who, who stays in s unless it's that importan to come to the United Stat recognize that the govern I think the court recogniz if I could just fast forw in terms of the sentence of them was probated in t a fundamental understanding involved in terms of why The problem is that it's do it that way. So, but t itself, when we take a lo believe, unlike Swafford if you look at that case, the Sixth Circuit was wil months for this person wi And there was, there was, the 20 people that came t those people knew each ot Let me ask you a question how to sort out whether t I mean, the case laws, I they have to have a common to me, we need to define level of generality. So i to have a common goal tha all four of these defenda goal of wanting to come t or more specifically, do a goal of, I want each of you know, that's involved on the Cambodian side. I to get there as well as m this, the latter, your hon the emphasis should be. A because it's not exclusiv Donald, when she had earl wasn't the objective that here. That is certainly a of it as well. And so tha is just a little bit diff drug transactions. It's m take a look at bail bills and I think that the in c that case, one can assume understand that they are a joint enterprise because on the success of those f and whom they sell. What' that case, which I don't defendants that were on t a 15 defendant case, the had no interaction with e me ask you, what evidence of these defendants partic another defendant got blo immigration official, did a real marriage. One of t I believe Neve testified obtaining or getting the about anywhere from 17 to the fee was to come to th on if you have kids or if kids. Um, and that was th well, you know what, do t And you would think that person, you'd say, well, it all up front. Who care who they're going to go t the case here. They only up front with the underst a built in risk that if y you don't have to pay the inference from that can b to keep the conspiracy go there was a, there's a bu understood that they coul there. But the, but the p and others weren't the on were they? And so I thought from Judge Catholic was w that we have today, limb, was it about their partic that indicated that, that any particular concern ab one was able to, you know then what we're asking yo hub and spoke thing, uh, agreement that, that allo grand conspiracy. There's that in terms of, you kno typical corporate, you kn down here where everybody straight up. That's, that' the focus more here is th plan is to have everybody States. Otherwise the cons just doesn't go. Neve tal the U. S. Side, the indivi he would recruit. You got a U. S. Citizen gets marr You can't go back and do there's documents out the can't. However, you can ad by recruiting other peopl it was, it was continued to other people who would and further the conspiracy I don't understand why wh uh, you know, everybody, to get to the U. S. Othew doesn't go. I mean for, y limb, I mean, what does s long as she's got the Ame to do this, I mean she co fortune isn't affected. I uh, spouse gets cold feet right? Well, for those, t um, to answer your questi have any evidence to show make it, she's not going this, this, this is not a all, you know, huddling u And so I would agree with that's not present. But I in the sense that the reas paid a little bit up fron that they got there. And not making it, then it co whether or not they would States. Um, you have any I mean, it's facially, I intuitive to me and I'm j anything. I want to say t as it relates to the docu joe mud, who was it? Chri But he testified regardin how it could be problemat being filed with the same or the same areas and loc Okay. Well, I mean, yeah, the feds sort of catch on operating and maybe that shutting it down for peop down if you don't have it I don't think there's any me for that, your honor. know, and I want to press that we do believe it's a And, and, but if the court not, um, you know, then t of this is that what is t defendants who went on tr why the facts are importa majority of those facts w would have been admissible trials if they were separa they should have been sepa could have. I think you c say that being in limb wo for sure. Probably throw was involved with that. A if you had to, you know, and you're not going to a chin who was with T with would be, you would say t two conspiracies. Well, I to Mr Olof's comments. He his client missus sitting the government concedes he is different. But there i evidence against what he but there's all this evid individuals that just kee And at the end, you know, just sort of swept up and same brush when there are aren't easily, um, uh, se because, you know, it's a So you talk about what is he, he perhaps, um, illus his belief as to what som was by, by arguing this s the evidence in the consp or allocated to each one I would agree that that i in Cody Echoes when they were, you know, the simon up all these, you know, f for, I think it was like at the end of that, the g right, you got me, but wh Um, and so that was actuall standards of review. And got lost in that 20 pages bottom line there was tha you're saying, give me a people have anything to d in this case, in terms of look at and what I think the spillover effect, the most cases deals with, yo Uh, you have a robber and you know, this guy over h who's got a firearm and y getting blasted with the here who had the murder a that spillover would abso case, each of them was ch charge. The timeline from to the United States occu time frame. They all over The last over act that to of these, um, was 060609 in terms of the evidence admissible as to each of would say 75% of what was probably 80 would have be of the individuals had go where the question would it would have been isolat been focused and let me j Let me just tell you that have, you know, here is a a complicated, convoluted spends a good bit of time case as they should. And an understanding of this jury who is hearing all t first time. Uh, and in a time, but in seven or eig all of this before them a the rules are, evaluate t and what Mr Ola says, his the end of all of this, y evidence and how, and he' whether or not the jury c the differential assessmen free of prejudice with re And I think that's a real agree. But in terms of th trial, uh, we're not that talks about having these and the government didn't up and they can kind of w large iodine guys. Our ca weeds with every marriage was significant overlap i with Kong Thai, who had p would Tia Nav and who act the luggage for sock Bay And so that evidence woul Sukunthi. So his trial, s not have been overly prej over simply would not hav And because of that, you'r up low on time here. I do prejudice that that's war of this guilty verdict. A that you that you concede that that you say was, wa only occurred twice in a about when. So knew that, Callister had a girlfriend all that. Okay. Yes. Okay And I think we have a few Goodwin here. Thank you. you argue the prejudice p issue in your, let me, le first. I think there are there's prejudice. First and I think all of the ot before you miss in gov. N with the substantive offe Statute of limitations ha offenses without without conspiracy, they would no those individuals. There for them to be charged as that procedural error or Additionally, there's cer over. And I think the Swa how the, um, the risk of to defendants greatly inc of defendants increase he said that there are 15 co There were 25 and there w 20 that they said were un And when they presented t there are 35 here. No, I take it. There were a lot they, and the thing was, spoke about the defendants one alleged, uh, coordina testified. The other folk basically summary evidence witnesses claiming here's between these individuals. basically for you. Uh, an bit of it through Mr. Nee person and that person. B said, well, I didn't have wedding. I wasn't involve that wedding involved in the court as well. So he between them. And if we l case, the Swofford case s be more than the same or with a common co defendant we have similar crimes co even a common co defendant they had one individual s various meth cookers. But under the government's th we want this new expanded wheel conspiracy where th different coordinators. N between them, but they ju So there is not here what are arguing is a common g required. Swofford says c crime with a linking co d that you buy the drugs fr It would be similar to th street level purchasers o involved in, uh, in some conspiracy. The court is in their questions of, uh, that those individuals, t another individual purcha They're there to purchase like these individuals in they're entering these ma care if other people do o government's argument tha if they don't make the, i make the purchases, the m and then there won't be d for purchase for this, th Uh, then then that, uh, i in that as some kind of i these purchasers of drugs not involved in a conspir was a conspiracy here betw but certainly not one inv defendants. And also as t really the government's c to prove that and to Judg of Mr Olash, the statute individuals know the marr at the time they enter the they do it with the purpo laws. Uh, they had no ide laws. They don't have to law, but they had no idea and there was no proof of that, that when they enter say that Mr Olash likes t is differently situated. Miss Ang and perhaps Miss that those individuals go They didn't get engaged an for a while and then come have a marriage here. I w evidence was extremely we Miss Ang and Miss Lim beca other women getting marrie didn't know the person th and would have no idea an that it was fraudulent th by the statute. And the t specifically was no one e they had, that they had, in a sham marriage. Thank for your argument. Uh, ca